PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4323
_____

NICOLE EHRHEART; JOHN J. GARLAND,
Individually and on behalf of all others similarly situated

v.

VERIZON WIRELESS; DOES 1 THROUGH 10 inclusive;
VERIZON WIRELESS SERVICES, LLC; CELLCO
PARTNERSHIP d/b/a VERIZON WIRELESS


NICHOL EHRHEART and JOHN GARLAND,

Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-cv-01165)
District Judge:  The Honorable Donetta W. Ambrose
_____

ARGUED OCTOBER 29, 2009

BEFORE: SMITH, FISHER,
and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed: June 15, 2010)
_____

Gary F. Lynch, Esq. (Argued)
R. Bruce Carlson, Esq.
Carlson Lynch
36 North Jefferson Street
PO Box 7635
New Castle, PA 16107

    <u>Counsel for Appellant, Ehrheart</u>


Justin S. Gilbert, Esq.
Gilbert Russell & McWherter
101 North Highland
Jackson, TN 38301

    <u>Counsel for Appellant, Garland</u>


Michael A. Carvin, Esq. (Argued)
Noel J. Francisco, Esq.
John M. Gore, Esq.
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001

Amy E. Dias, Esq.
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA 15219

Counsel for Appellees

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

I.

We focus in this appeal on the parameters of a district court's role in reviewing class action settlements. The factual and procedural background is straightforward. The Fair and Accurate Credit Transaction Act (FACTA), 15 U.S.C. § 1681 *et seq.*, prohibits a seller from printing a receipt that displays more than the last five digits of a buyer's credit or debit card and/or the expiration date of the credit or debit card. 15 U.S.C. § 1681c(g)(1). The Appellants claimed that Verizon Wireless violated these provisions and filed a class action lawsuit against the company.

The parties participated in court-ordered mediation, starting in January of 2008. During this time, legislation was pending before Congress—the Credit and Debit Card Receipt Clarification Act of 2007, 15 U.S.C. § 1681n(d)—which would

3

amend FACTA by eliminating the Appellants' cause of action. After completing mediation, the parties arrived at a settlement which they submitted to the District Court for approval pursuant to FED.R.CIV.P. 23(e) on April 22, 2008. The District Court entered a preliminary order approving the settlement two days later.

The Clarification Act was signed into law by President Bush on June 3, 2008. Six days later, Verizon filed a motion asking the District Court to vacate its order granting preliminary approval to the settlement. The District Court granted this motion.[1] Verizon then moved for a judgment on the pleadings, which was granted on September 25, 2008. We will reverse.

## II.

Federal Rule of Civil Procedure 23(e) requires a district court to approve any settlement of a certified class before the settlement becomes final. In evaluating a class action settlement under Rule 23(e), a district court determines whether the settlement is fundamentally fair, reasonable, and adequate. *Id.* The purpose of Rule 23(e) is to protect the unnamed members

---

[1] We note that in other almost identical cases, district judges within this Circuit have denied requests to set aside FACTA settlements after passage of the Clarification Act. *See Colella v. Univ. of Pittsburgh*, 569 F.Supp.2d 525 (W.D. Pa. 2008); *Hughes v. InMotion Entertainment*, 2008 WL 3889725 (W.D. Pa. Aug. 18, 2008); *Curiale v. Lenox Group Inc.*, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008).

4

of the class from unjust or unfair settlements. *See In re AT & T Corp.*, 455 F.3d 160, 175 (3d Cir. 2006) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001)). Here, the District Court never considered whether to approve the settlement because, citing the Clarification Act, the court vacated its preliminary approval.

In vacating its order granting preliminary approval to the settlement, the District Court lost sight of three important points that guide our decision today. First, there is a restricted, tightly focused role that Rule 23 prescribes for district courts, requiring them to act as fiduciaries for the absent class members, but that does not vest them with broad powers to intrude upon the parties' bargain. Second, a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation. Third, our jurisprudence holds that changes in the law after a settlement is reached do not provide ground for rescission of the settlement.[2]

A.   Appropriate Role of the District Court

Under FED.R.CIV.P. 23(e), a district court's primary role is to determine whether the settlement is fundamentally fair, reasonable and adequate. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). The purpose of Rule 23(e) is to protect the unnamed members of the class. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

---

[2.]We exercise plenary review when reviewing a district court's grant of judgment on the pleadings. *Jablonski v. Pan Am World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988). We also exercise plenary review in construing and constructing a settlement agreement. *Coltec Indus. Inc. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002).

Under Rule 23(e), a district court acts as a fiduciary, guarding the claims and rights of the absent class members. *In re AT&T*, 455 F.3d at 175 (citing *In re Cendant Corp. Litig.*, 264 F.3d at 231); *see also, In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.,* 55 F.3d 768, 782 (3d Cir. 1995).

The requirement that a district court review and approve a class action settlement before it binds all class members does not affect the binding nature of the parties' underlying agreement. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Put another way, judicial approval of a class action settlement is a condition subsequent to the contract and does not affect the legality of the proposed settlement agreement. *Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982). A district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between parties. In *Evans v. Jeff D.*, 475 U.S. 717 (1986), the Supreme Court explained the role of a district court in reviewing settlements in class actions:

> Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.

*Id.* at 726-27 (footnotes omitted). Similarly, our role as an appellate court is to ascertain whether or not the trial judge clearly abused his or her discretion in approving or rejecting a settlement agreement. *See GM Truck,* 55 F.3d at 782; *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977).

We have no doubt that the settlement agreement reached in this case is a binding and enforceable contract under general principles of contract interpretation. The settlement agreement was negotiated through and executed by experienced counsel on

6

both sides, following mediation with a well-respected and experienced mediator. The parties acknowledged to the District Court that the agreement was negotiated in good faith and at arm's length. Verizon admits no wrongdoing in the settlement agreement and denies all liability, but agreed to the settlement after taking into account the uncertainty and risks inherent in any litigation, especially in multi-party cases like this litigation.

Post-settlement, Verizon made the argument, which was endorsed by the District Court, that a settlement agreement is not a binding contract until final judicial approval. This is incorrect. There are two steps in reaching a settlement in a class action. First, the parties reach an agreed-to settlement. Second, the District Court evaluates the agreement as a fiduciary for absent class members. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 257. The reason for judicial approval is to ensure that other unrepresented parties (absent class members) and the public interest are fairly treated by the settlement reached between the class representatives and the defendants. *Collins,* 679 F.2d at 172. Here, the District Court's own local rules specifically establish this fiduciary relationship by requiring parties to class action settlements to give the court "sufficient information for the Court to make findings with respect to the fairness and reasonableness of the settlement *to the class*." Local Rule of the United States District Court for the Western District of Pennsylvania 23(i) (emphasis added). We make clear that this fiduciary protection does not extend to defendants in a class action, who are in a position to protect their own interests during negotiations. *See Ibarra v. Texas Employment Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987).

If Verizon's argument was accepted, and the District Court's action in vacating its preliminary approval affirmed, the settlement process would become meaningless since either party to a class action settlement (or any other type of settlement that requires court approval) could back out of an agreement at any

7

time before court approval and avoid any legal repercussions for breaching the earlier offer and acceptance. Here, the Clarification Act was pending before Congress when the parties negotiated their agreement. In negotiating this agreement, Verizon bet on the certainty of settlement instead of gambling on the uncertainties of future legislative action. Verizon lost, and the District Court erred by letting it replay its hand.

## B. Presumption in Favor of Settlements

The District Court's decision also ran afoul of the strong presumption in favor of voluntary settlement agreements, which we have explicitly recognized with approval. *See, e.g., Penwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982). This policy is also evident in the Federal Rules of Civil Procedure and the District Court's Local Rules, which encourage facilitating the settlement of cases. *See, e.g.,* FED.R.CIV.P. 16(a)(5) (one of the five purposes of a pretrial conference is to facilitate settlement); L.Cv.R. 16.2(B) (recognizing the burden litigation places on parties and mandating that they utilize a broad range of court-sponsored ADR processes); L.Cv.R. 23(C)(5) (including among matters to be discussed at pretrial conference the timing and plan for methods of alternative dispute resolution). This presumption is especially strong in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *GM Truck,* 55 F.3d at 784. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. *See D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). In addition to the conservation of judicial resources, the parties

8

may also gain significantly from avoiding the costs and risks of a lengthy and complex trial. *Id.* By vacating its preliminary approval of the settlement and by granting Verizon a judgment on the pleadings, the District Court permitted Verizon to void its settlement agreement when it became unpalatable and digressed from the federal policy of encouraging class action settlement agreements.

## C. Changes in the Law after Settlement

The parties do not dispute on appeal (nor did they before the District Court) that the Clarification Act eliminated the Appellants' cause of action or that the Act retroactively encompasses the Appellants' claims. The question on appeal, therefore, is not whether the Clarification Act, enacted earlier, would have eliminated Appellants' underlying claims, but rather whether the Act moots the settlement agreement the parties executed while that legislation was pending in Congress. We conclude that it does not.

We first note that changes in the law after settlement do not affect the validity of the agreement and do not provide a legitimate basis for rescinding the settlement. Albeit in the context of a FED.R.CIV.P. 60(b) motion, we have held that a favorable change in the law post-settlement does not give a settling party a basis to repudiate an otherwise valid settlement agreement. *Coltec Industries, Inc. v. Hobgood,* 280 F.3d 262, 273 (3d Cir. 2002); *see also Agostini v. Felton*, 521 U.S. 203, 239 (1997) (observing that "intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)"); *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007). Of particular concern in *Coltec* was the belief that the company was attempting to escape the consequences of a bargain it regretted in hindsight. *Id.* We noted that "even if Coltec's decision to settle was improvident in hindsight, the decision has been made and cannot be

9

revisited," and held that the company must bear "the consequences of its informed, counseled and voluntary decision" to settle. *Id.* at 275.

In *Coltec*, we analogized a litigant's decision to settle to a determination not to appeal an unfavorable determination. *Id.* at 274. We found such decisions, when voluntarily made, to be calculated and deliberate choices by a litigant, choices which provide no relief when the legal landscape subsequently changes. *Id.* (citing *Ackerman v. United States*, 340 U.S. 193, 198 (1950)). Like a decision to forgo an appeal, the decision to settle a case is a considered one. The choice to settle implicitly acknowledges calculated risks and, in the end, reflects the deliberate decision of both parties to opt for certainty in terminating their litigation. *See Ackerman*, 340 U.S. at 198. We will not relieve a party of that decision because hindsight reveals that its decision was, given later changes in the law, probably wrong. *Id.* The District Court erred by permitting Verizon to escape the consequences of its informed, counseled and voluntary decision to settle. Later changes in the law gave it no foundation to do so. *See Coltec*, 280 F.3d at 275.

It is essential that the parties to class action settlements have complete assurance that a settlement agreement is binding once it is reached. *See In re Syncor*, 516 F.3d at 1100 (citing *Collins*, 679 F.2d at 172). The fact that a settlement agreement is governed by Rule 23 does not diminish its enforceability as a contract. Where, as here, the parties have executed an agreement, a party cannot avoid its independent contractual obligations simply because a change in the law confers upon it a benefit that could have altered the settlement calculus.

Our dissenting colleague believes that the passage of the Clarification Act rendered the settlement agreement moot. We do not agree. Mootness asks "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled

10

any occasion for meaningful relief." *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996) (quotations and citations omitted). This reflects the current posture of the case. *See also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)'" (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)) (additional citation omitted).).

Viewing this case for mootness, we conclude that the doctrine does not apply. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Donovan ex. rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "The mootness doctrine is centrally concerned with the court's ability to grant effective relief: 'If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.'" *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir.1996)). We find nothing in the Clarification Act that would moot the parties' settlement agreement. Further, the fact that the settlement agreement is a class action settlement governed by Rule 23 does not affect the enforceability of the agreement as a binding contract. The parties executed the agreement with the understanding that intervening events could affect their interests in the litigation. *See, e.g., Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 863 (7th Cir. 1986) (citing *Glass v. Rock Island Refining Corp.,* 788 F.2d 450 (7th Cir. 1986)).

11

Further, the Clarification Act did not change the District Court's ability to grant effective relief. The Appellants still had a "personal stake in the outcome"—the settlement agreement—and the District Court continued to possess the ability and the authority to approve the settlement. *See Old Bridge Owners Coop. Corp. v. Twp. of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001). Assuming on remand the District Court finds the settlement fair, adequate and reasonable to absent class members, the District Court can grant complete relief by entering judgment on the settlement agreement. Thus, the Clarification Act does not render the settlement moot.

## III.

In sum, we will reverse the District Court's judgment on the pleadings and remand this matter with instructions for it to reinstate its preliminary approval of the settlement agreement and to proceed with the Rule 23 process.

*Ehrheart v. Verizon*, No. 08-4323, dissenting.

SMITH, *Circuit Judge*.

Having read the same briefs and heard the same oral argument, the majority and I seem almost to be deciding two different appeals. In the majority's view, this case presents a simple, run-of-the-mill class action settlement agreement binding two willing, sophisticated parties. As such, according to the majority, the District Court was obligated, as a fiduciary for the absent class members, to reject any motion that would harm those class members.

In my view, this case is about mootness and standing, two interrelated doctrines that are derived from Article III of the Constitution's "case or controversy" requirement. The District Court unquestionably had a fiduciary duty to the absent class members. But that duty is triggered only within the confines of Rule 23(e),[1] *i.e.*, when dealing with settlements, voluntary

---

[1] All references to "Rule 23(e)" refer to Rule 23(e) of the Federal Rules of Civil Procedure. That provision states:

> Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed

1

dismissals, or compromises.  It cannot expand the boundaries of federal court jurisdiction under Article III.  Here, the District

_____

settlement, voluntary dismissal, or compromise:

(1)  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2)  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3)  The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4)  If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5)  Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

Court gave effect to a congressional mandate, the Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act" or the "Act"), Pub. L. No. 110-241, 122 Stat. 1565 (2008), an enactment that effectively stripped standing for claims based solely on the printing of a receipt containing the expiration date of a credit or debit card, *id.*, § 3(a). Congress instructed that the Act should be "appl[ied] to any action, other than an action which has become final," *id.*, § 3(b), meaning that the Act applied to this case because at the time it was passed the District Court had not yet held a fairness hearing, issued final approval of the settlement, or entered final judgment. Although I disagree with the District Court's reliance on Rule 23(e) in reaching its outcome, because I conclude that the Clarification Act rendered the named plaintiffs' cases moot, I would reach a similar outcome. I would vacate the judgment on the pleadings in favor of Verizon and remand this case to the District Court with instructions to dismiss the named plaintiffs' complaints as moot.

Before turning to this issue, however, I must explain the origins of the Clarification Act, and the procedural and factual posture of this case—aspects of this case that the majority all but overlooks.

3

I.

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*,[2] was amended in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (2003), to, *inter alia*, prevent identity theft. To serve this end, FACTA, subject to a few exceptions not relevant to this appeal, prohibited the electronic printing of more than the last five digits of a credit or debit card account number or the card's expiration date on a receipt:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g)(1). This prohibition became effective on December 4, 2006, three years after the date of FACTA's enactment, for "device[s] that electronically print[ed] receipts . . . that [were] in use before January 1, 2005." *Id.* §

---

[2] The Fair Credit Reporting Act was "passed in 1970 to insure that consumer reporting agencies exercise their 'grave responsibilities' regarding the 'assembling and evaluating [of] consumer credit and other information on consumers' with 'fairness, impartiality, and a respect for the consumer's right to privacy.' 15 U.S.C. § 1681(a)(3) and (4)." *Houghton v. Ins. Crime Prevention Inst.*, 795 F.2d 322, 323-24 (3d Cir. 1986).

4

1681c(g)(3)(A). For devices first put into use "on or after January 1, 2005," the prohibition became effective one year after FACTA's enactment, on December 4, 2004. *Id.* § 1681c(g)(3)(B).

Individuals who willfully fail to comply with this deadline risk civil liability under the Fair Credit Reporting Act:

> Any person who willfully fails to comply with any requirement imposed under [the Fair Credit Reporting Act] with respect to any consumer is liable to that consumer in an amount equal to the sum of --
>
>> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or . . .
>>
>> (2) such amount of punitive damages as the court may allow; and
>>
>> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

In June of 2008, Congress passed the Clarification Act, which modified the civil liability provision to exclude instances between December 4, 2004, and June 3, 2008, where an individual did not remove an expiration date of a credit or debit card from a receipt, but otherwise complied with FACTA:

> [A]ny person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [June 3, 2008] but otherwise complied with the requirements of [15 U.S.C. § 1681c(g)] for such receipt shall not be in willful noncompliance with [that] section . . . by reason of printing such expiration date on the receipt.

Pub. L. No. 110-241, § 3(a) (codified at 15 U.S.C. § 1681n(d)). This exclusion of expiration date claims "appl[ied] to any action, other than an action which ha[d] become final . . . without regard to whether such action [wa]s brought before or after the date of the enactment of th[e] [Clarification] Act." Pub. L. No. 110-241, § 3(b).

The purpose of the Act was "to ensure that consumers suffering from any actual harm to their credit or identity [we]re protected while simultaneously limiting abusive lawsuits that d[id] not protect consumers but only result[ed] in increased cost

6

to business and potentially increased prices to consumers." *Id.*, § 2(b). In Section 2 of the Act, Congress set forth its findings explaining its decision to exclude liability for the printing of a card's expiration date. Congress acknowledged that it enacted FACTA to reduce identity theft, and that, as written in 2003, FACTA prohibited the printing of a credit or debit card's expiration date or more than the last five digits of that card's account number. *Id.*, § 2(a)(1) and (2). Congress found that these requirements were mistakenly understood by "[m]any merchants" as requiring only a truncation of the "account number down to the last 5 digits[.]" *Id.*, § 2(a)(3). It also found that FACTA resulted in "hundreds of lawsuits . . . alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated." *Id.*, § 2(a)(4). According to Congress, "[n]one of these lawsuits contained an allegation of harm to any consumer's identity." *Id.*, § 2(a)(5). Congress further found that "[d]espite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represent[ed] a significant burden on the hundreds of companies that ha[d] been sued and could raise prices to consumers without corresponding consumer protection benefit." *Id.*, § 2(a)(7).

## II.

Verizon was one of the many merchants that Congress found had failed to remove credit or debit card expiration dates from receipts. *See id.*, § 2(a)(3). In August of 2007, Nicole

7

Ehrheart filed one of the "hundreds of lawsuits . . . alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act," *id.*, § 2(a)(4), in the United States District Court for the Western District of Pennsylvania. She filed her complaint as a class action, purporting to represent a class of individuals harmed by Verizon's printing of credit and debit card account numbers and expiration dates, but her personal injury was limited to the printing of an expiration date. She alleged that on June 7, 2007, Verizon gave her an electronically printed receipt on which the expiration date of her credit or debit card had been printed. Although there were no specific "allegation[s] of harm to any consumer's identity," *id.*, § 2(a)(5), Ehrheart believed that she deserved redress. According to her complaint, Verizon violated 15 U.S.C. § 1681c(g), entitling her to statutory damages, punitive damages, costs, and attorney fees. In December of 2007, the District Court referred Ehrheart's action to mediation, and by late February of 2008 the parties had agreed to settle.

A similar putative class action had been filed by John J. Garland in the United States District Court for the Western District of Tennessee on July 27, 2007. Unlike Ehrheart, Garland alleged his personal injury in an ambiguous fashion, not stating whether he received a receipt with his credit or debit card account number, expiration date, or both printed on it. On April 14, 2008, Garland's action was transferred to the Western District of Pennsylvania and consolidated with Ehrheart's action. On April 22, 2008, Ehrheart, Garland, and Verizon

8

executed a Class Action Settlement Agreement (the "Settlement Agreement" or the "Agreement").

*The Settlement Agreement*

The Settlement Agreement was limited to individuals who received electronically printed receipts displaying a debit card's expiration date. The Agreement defined the "Class" as:

> All persons who received electronically printed receipts displaying an expiration date from Verizon Wireless at the point of sale or transaction in a Verizon Wireless Communications store, in a transaction occurring between December 4, 2006 and April 21, 2008, where payment was made with a debit card and authorized by a personal identification number.

The parties stipulated and agreed that the settlement was conditioned on the District Court's preliminary and final approval. According to the Agreement, a preliminary approval order was needed to: (1) certify the class for settlement purposes; (2) appoint a class representative; (3) confirm that the likelihood of final approval of the settlement was sufficient to warrant sending out notice to the class; and (4) schedule a fairness hearing to determine the fairness, adequacy, and reasonableness of the Settlement Agreement, and (5) to enter final judgment. Settlement Agreement 8 (¶ 1.19). Once the District Court entered the preliminary approval order and notice

was disseminated to the class, it was to conduct a fairness hearing, as required by Rule 23(e). If the Settlement Agreement met the requirements of Rule 23(e), then the District Court was to enter an order of final approval and enter final judgment.

The parties agreed that if they did not receive final approval of the settlement or if the associated judgment did not become final for any reason, the Agreement would be "null and void *ab initio*":

> In the event that the Court does not execute and file the Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become Final for any reason, this Settlement Agreement shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, [and] it shall not be referred to or utilized for any purpose whatsoever[.]

Settlement Agreement 2;[3] *id.* at 15-16 (¶ 2.4.8) (The parties

---

[3] "Final" was defined as:

(i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the

agreed that "[i]f the Court reject[ed] the Stipulation, fail[ed] to enter the Order of Final Approval, or fail[ed] to enter the Judgment, th[e] Agreement shall be void *ab initio*, and Verizon . . . shall have no obligations to make any payments under the Settlement Agreement."). In the event that the Settlement Agreement was "terminated pursuant to its terms . . . or . . . [wa]s not effectuated for any reason," the litigation was to proceed "as if no party had ever agreed to [the] proposed settlement, without prejudice to the right of any party to continue to seek or to oppose class certification." *Id.* at 5.

*Preliminary Approval of the Settlement Agreement*

On April 22, 2008, the parties filed a joint motion for preliminary approval of the Settlement Agreement, requesting that the District Court approve the terms of the settlement, certify the class for settlement, approve the proposed class notice to be sent to the class, and schedule a fairness hearing. On April 24, 2008, the District Court granted preliminary approval of the Settlement Agreement, and scheduled a fairness hearing for August 27, 2008.

---

Judgment.

Settlement Agreement 6 (¶ 1.10).

11

*Vacatur of the Order Granting Preliminary Approval*

On June 9, 2008, six days after the passage of the Clarification Act, Verizon moved to vacate the District Court's preliminary approval order. In its motion, Verizon pointed out that "Congress enacted a law that unequivocally extinguished [the] [p]laintiffs' claims underlying the proposed settlement." Because "no valid claims exist[ed] to settle," Verizon argued, "the proposed settlement [wa]s not 'fair, adequate and reasonable'" and the District Court could not provide final approval for the settlement.

On June 13, 2008, the District Court granted Verizon's motion to vacate the preliminary approval order. In its order, the District Court reasoned that "Congress made clear that the [Clarification] Act '. . . appl[ied] to any action, other than an action which ha[d] become final . . .'" and that "[t]his litigation [wa]s not final," as it had yet to give final approval to the Settlement Agreement. Because Congress eliminated the plaintiffs' cause of action, the District Court reasoned, it had to vacate its preliminary approval of the Settlement Agreement. The plaintiffs moved for reconsideration and the District Court denied the motion, rejecting the argument that it should ignore the Act and simply enforce the Settlement Agreement negotiated by the parties because its only remaining role under Rule 23(e) was to ensure that the settlement was fair, reasonable and adequate to the absentee class members. Aside from reiterating its view that the Clarification Act extinguished the plaintiffs'

12

claim, the District Court added that under Rule 23(e), "[n]o class action settlement can be fair, adequate or reasonable when Congress has determined that such relief is unfair and unreasonable."

Verizon then moved for judgment on the pleadings, asserting that judgment was warranted because the plaintiffs' claims had been eliminated by the Clarification Act. The plaintiffs opposed the motion, relying on the same arguments offered in their opposition to Verizon's motion to vacate the preliminary approval order. Notably, they never asserted that they had claims other than those based on the failure to remove credit or debit card expiration dates. The District Court granted Verizon's motion for judgment on the pleadings on September 25, 2008.

The plaintiffs filed this timely appeal, challenging four orders by the District Court, all of which turn on whether it properly vacated its preliminary approval of the Settlement Agreement: (1) the June 13, 2008 order granting Verizon's motion to vacate preliminary approval; (2) the September 25, 2008 order denying the motion for reconsideration; (3) the September 25, 2008 order granting Verizon's motion for judgment on the pleadings; and (4) the judgment entered on September 25, 2008.

13

III.

The Clarification Act, without question, extinguished Ehrheart's injury-in-fact as alleged in her complaint. Without an injury-in-fact, a requirement for Article III standing, the District Court was obligated to dismiss Ehrheart's action as moot immediately. It lacked the authority to hold the required fairness hearing, enter an order of final approval for the settlement, or enter final judgment in the action. To do so would have violated Article III's "case or controversy" limitation on its jurisdiction. Garland's complaint, on the other hand, left open the possibility that Verizon printed more than the last five digits of his credit or debit card account number—a viable claim notwithstanding the Clarification Act—but his arguments throughout this litigation show that he, like Ehrheart, suffered an injury based solely on the printing of the expiration date of his credit or debit card. Thus, I likewise conclude that, after the passage of the Clarification Act, Garland lost standing and his claim was rendered moot.

I reach these conclusions based on two observations. First, the Clarification Act applied to both plaintiffs' complaints, despite the District Court's issuance of preliminary approval for the Settlement Agreement. Second, Article III requires that a plaintiff have an injury-in-fact, and the Act eliminated the printing of a credit or debit card's expiration date as a cognizable injury for which an individual may seek relief under FACTA.

14

A.

The Clarification Act plainly extinguished causes of action based solely on the printing of a credit or debit card's expiration date prior to the District Court's final approval of the settlement and entry of final judgment. In relevant part, the Act stated:

> [A]ny person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [June 3, 2008] but otherwise complied with the requirements of [15 U.S.C. § 1681c(g)] for such receipt shall not be in willful noncompliance with [that] section . . . by reason of printing such expiration date on the receipt.

Pub. L. No. 110-241, § 3(a) (codified at 15 U.S.C. § 1681n(d)). This provision applies to "any action, other than an action which has become final . . . without regard to whether such action [wa]s brought before or after the date of the enactment of this Act." Pub. L. No. 110-241, § 3(b).

Although Congress did not define the term "final" in the Clarification Act, it is obvious that it was referring to finality in the judicial sense, as it enacted the legislation to rein in "abusive lawsuits," *id.*, § 2(b). Congress's findings explained that "the continued appealing and filing of these lawsuits represent[ed] a

15

significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit." *Id.*, § 2(a)(7). Taking into account the Act's goal of eliminating wasteful lawsuits, I conclude that Congress intended the federal courts to apply the Clarification Act to any action that was not, in the judicial sense, "final."

In the judicial context, a "'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). In class action litigation where the parties have negotiated a settlement, voluntary dismissal, or compromise, Rule 23(e) lays out procedures for achieving finality in the dispute. Fed. R. Civ. P. 23(e). That rule establishes that, regardless of the parties' compromise, the court must hold a fairness hearing, Fed. R. Civ. P. 23(e)(2), and determine whether to approve the settlement before the matter is final, Fed. R. Civ. P. 23(e). This long-standing procedural requirement first appeared in the 1966 amendments to the rule. *See* Fed. R. Civ. P. 23 (1966) (stating that "[a] class action shall not be . . . compromised without the approval of the court"). Since at least 2003, Rule 23(e) has explicitly stated that court approval of a class action settlement may be given "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see id.*, Advisory Committee Notes on 2003 Amendments. Congress was well aware of the 2003 amendments to Rule 23 because they were

16

passed onto it for review pursuant to the Rules Enabling Act. *See* 28 U.S.C. §§ 2072, 2074.[4]  Thus, when Congress enacted the Clarification Act and specified that it applied to "any action, other than an action which has become final," Pub. L. No. 110-241, § 3(b), it knew that a class action settlement pending district court approval under Rule 23(e) was not an action which had become final.

Accordingly, because the District Court had yet to conduct a fairness hearing, issue final approval of the settlement, or enter final judgment in this case—all activities contemplated under Rule 23(e) and required under the Settlement Agreement[5]—the litigation could not have been final

---

[4]  "The Federal Rules of Civil Procedure are not enacted by Congress, but Congress participates in the rulemaking process." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 552 (1991) (internal quotation marks and citations omitted).  "Congress has undoubted power to regulate the practice and procedure of federal courts," *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 9 (1941), so if it disagreed with a proposed rule promulgated by the Supreme Court, it could "vote to abrogate [that] rule," *In re Richards*, 213 F.3d 773, 786 (3d Cir. 2000).

[5]  The Agreement was expressly made conditional by the parties, and if the District Court "fail[ed] to enter the Order of Final Approval, or fail[ed] to enter the Judgment, th[e] Agreement [would be rendered] void *ab initio*[.]"  Settlement

17

as of the date the Clarification Act was passed, June 3, 2008. As such, the Clarification Act applied to the Ehrheart and Garland actions.

The District Court's preliminary approval of the Settlement Agreement cannot rationally be construed as a final disposition of this case in any sense. While it is true that an order of preliminary approval may establish "an initial presumption of fairness" in some circumstances, *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785 (3d Cir. 1995) [hereinafter *In re GM Truck*],[6] that presumption does not inexorably result in final approval of a settlement. "[I]t is clear that the court should not give rubber-stamp approval." 4 William B. Rubenstein, Alba

---

Agreement 16 (¶ 2.4.8). Furthermore, the Agreement contemplated the possibility that the settlement would not occur. In that event, the litigation would "proceed as if no party had ever agreed to such proposed settlement, without prejudice to the right of any party to continue to seek or to oppose class certification." *Id.* at 5.

[6] We have held that a preliminary approval order "establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re GM Truck*, 55 F.3d at 785.

Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2009) [hereinafter *Newberg on Class Actions*]. Prior to final approval of a settlement, the district court must hold a fairness hearing and examine at least nine factors to determine whether the settlement is fair, reasonable, and adequate. *In re GM Truck*, 55 F.3d at 785.[7] This examination must be "exacting and thorough" because the "adversariness of litigation is often lost" once parties agree to settle:

> The settling parties frequently make a joint presentation of the benefits of the settlement without significant information about any drawbacks. If objectors do not emerge, there may be no lawyers or litigants criticizing the settlement or seeking to expose flaws or abuses. Even if objectors are present, they might simply seek to be treated differently than the class as a whole, rather than advocating for class-wide interests. The lack of significant opposition may mean that the settlement meets the requirements of fairness, reasonableness, and adequacy. On the other hand, it might signify no more than inertia by class members or it may indicate success on

---

[7] Those nine factors are: "(1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation." *In re GM Truck*, 55 F.3d at 785.

> counsel's part in obtaining, from likely opponents and critics, agreements not to object.

Manual for Complex Litigation, Fourth, § 21.61. "Even if there are no or few objections or adverse appearances before or at the fairness hearing, the judge must ensure that there is a sufficient record as to the basis and justification for the settlement." *Id.*, § 21.635; Fed. R. Civ. P. 23(e)(2) (stating that the court may only approve the settlement on "*finding* that it is fair, reasonable, and adequate") (emphasis added). "The record and findings must demonstrate to a reviewing court that the judge has made the requisite inquiry and has considered the diverse interests and the requisite factors in determining the settlement's fairness, reasonableness, and adequacy." Manual for Complex Litigation, Fourth, § 21.635; Fed. R. Civ. P. 23(e), Advisory Committee Notes on 2003 Amendments ("The findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on applying the standard.").[8]

A district court may deny final approval for a settlement in a variety of situations, including where absent class members' interests are not served, *In re GM Truck*, 55 F.3d at 785, the defendant "selects among [plaintiff] attorneys for competing classes and negotiates an agreement with the attorneys who are

---

[8] Notably, while we require an exacting and thorough review by a district court, we also grant substantial deference to that court's fact-finding. A district court's approval of a class action settlement is subject to abuse of discretion review by an appellate court. *In re Cendant Corp. Litig.*, 264 F.3d 286, 293 (3d Cir. 2001) (citing *In re GM Truck*, 55 F.3d at 782-83). Thus, the district court's findings need only survive review for clear error. *In re GM Truck*, 55 F.3d at 783.

willing to accept the lowest class recovery (typically in exchange for general attorney fees)," Manual for Complex Litigation, Fourth, § 21.61, "class members [receive] illusory nonmonetary benefits . . . while granting substantial monetary attorney fee awards," *id.*, defendants seek to "impos[e] . . . strict eligibility conditions . . . [such] that many [class] members will be unlikely to claim benefits," *id.*, the settlement treats "similarly situated class members differently," *id.*, the settlement releases "claims against parties who did not contribute to the class settlement," *id.*, or the settlement releases "claims of parties who received no compensation in the settlement," *id.*[9]

The factors considered in determining whether a settlement is fair, reasonable, and adequate, *see supra* n.7, "are [just] a guide; an unfavorable conclusion regarding one or more factors does not automatically render the settlement unfair." 2 Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* § 6:7 (6th ed. 2010). Each settlement agreement must be evaluated based on the particular circumstances of that case and, as shown by the examples above, there are many reasons why a district court may not issue final approval for a settlement agreement.[10]

---

[9] *See* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 12-16 (Federal Judicial Center 2005) (discussing other settlement terms that are "hot button indicators" that "show their potential unfairness on their face").

[10] Indeed, while recognizing the benefits of multi-factor tests for Rule 23(e)—such as, signaling to district courts that the inquiry is fact intensive and relies on discretion, and providing parties a roadmap for settlement, Jonathan R. Macey & Geoffrey

In sum, there was still much for the District Court to do

_____

P. Miller, *Judicial Review of Class Action Settlements*, 1 J. of Legal Analysis 167, 172 (2009)—some commentators have suggested that such tests suffer from a variety of deficiencies that result in "confusion and inconsistency in standards for review of class action settlements[.]" *Id.* at 202. Among other issues, the sheer number of factors to consider may encourage perfunctory analysis by district courts. *Id.* at 172. "Courts applying [a multifactor] test[] often recite the litany and engage in pro forma analyses, but their hearts are not in it." *Id.* Also, the federal courts have yet to provide a uniform procedure for weighing the various factors implicated in a class action settlement:

> Like all factor tests, the considerations do not always point in the same direction with the same force (if they did, the court could save time by looking at only one). A weighting is required. Should the courts assign equal weights to all the factors? The items are too diverse to make this plausible. But which factors should get more weight and which less? The courts of appeals don't provide much enlightenment. Some opinions indicate that the most important factor is the value of the settlement compared with what the class could expect from continued litigation. This may be interpreted as weighting one consideration over others, but it leaves open how much weight is demanded and how other factors should be assessed. This lack of clarity may be typical of factor tests but it is not an outcome that lends much predictability or certainty to the law.

*Id.* at 174.

22

to conclude this litigation by way of settlement. Thus, this matter was not final and the Clarification Act applied to both named plaintiffs' complaints.

B.

The majority claims that the District Court could not have vacated its order of preliminary approval without losing sight of its tightly focused role as a fiduciary for the absentee class members. Indeed, it is well established that "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members[.]" *In re GM Truck*, 55 F.3d at 785; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ("Rule 23(e) . . . protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.") (internal quotation marks omitted); *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 175 (3d Cir. 2006); *In re Cendant Corp. Litig.*, 264 F.3d at 296. But Rule 23(e) and the District Court's corresponding duties under that rule apply to only proposed settlements, voluntary dismissals, or compromises. Fed. R. Civ. P. 23(e). They do not apply to involuntary dismissals, such as *sua sponte* dismissal for mootness. In *Amchem Products, Inc.*, the Supreme Court stated, albeit in dicta, that "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right[.]'" 521 U.S. at 613 (quoting 28 U.S.C. § 2072(b)); *see* Fed. R. Civ. P. 82 (stating that the Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts"). "[A] class action

is a procedural device." 1 *Newburg on Class Actions* § 1:2. It "cannot confer standing to sue on a named plaintiff who seeks to represent a class[.]" *Id.*[11]

---

[11] The majority, in its attempts to sustain a live "case or controversy," argues that the District Court could still grant effective relief to the plaintiffs by virtue of the existence of the Settlement Agreement and the District Court's ability to approve that agreement after a fairness hearing. This argument succinctly illustrates the errors of the majority's approach. Rule 23, like all the Federal Rules of Civil Procedure, cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Nor can it "extend or limit the jurisdiction of the district courts[.]" Fed. R. Civ. P. 82. Yet the majority seeks to use the procedures set forth in Rule 23 to accomplish both those things.

The majority's approach would grant class members who do not opt out of the Settlement Agreement "substantive right[s]" that would be denied to class members who do opt out, in violation of the Rules Enabling Act. 28 U.S.C. § 2072(b). Under the majority's holding, the former group may receive relief for a non-existent injury because the Settlement Agreement and the procedures set forth under Rule 23 purportedly provide for such a result. Class members who opt out, however, would have no right to relief. If an individual who opted out of the Settlement Agreement sought to proceed on her own claim, that claim would be dismissed because the Clarification Act eliminated her cause of action.

In the same vein, the majority asserts that this case is not moot because the District Court could hold a fairness hearing and grant relief—the approval of the Settlement Agreement—for the class members. Pointing to any Federal Rule of Civil Procedure, including Rule 23, as the source of

24

Here, the District Court, couching its decision in terms of the "fair, adequate, and reasonable" language of Rule 23(e), vacated its order granting preliminary approval of the settlement because the statutory basis for the plaintiffs' claims had been eliminated. Instead, it should have dismissed both named plaintiffs' complaints as moot since their injuries were based on the electronic printing of card expiration dates during the period for which the Clarification Act eliminated the corresponding statutory injury, 15 U.S.C. § 1681n(d). *See Amchem Prods., Inc.*, 521 U.S. at 613.

Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks omitted); *Artway v. Att'y Gen. of the State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996) ("Mootness . . . asks whether a party who has established standing has now lost it because the facts of her case have changed over time."). Therefore, we look to the doctrine of standing to inform our application of the mootness doctrine. "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "This is the threshold question in every federal case, determining the power of the court to entertain the suit." *Id.* "Like any jurisdictional requirement, standing cannot be waived." *Pub. Interest Research Group of N.J., Inc. v.*

Article III jurisdiction is categorically barred. Fed. R. Civ. P. 82. Rule 23's procedures *cannot* resuscitate a moot case. *Id.*

25

*Magnesium Elektron, Inc.*, 123 F.3d 111, 117 n.5 (3d Cir. 1997). In general, a plaintiff "must have standing at all stages of the litigation[.]" *Id.* at 117. "[F]ederal appellate courts have a bedrock obligation to examine both their own subject matter jurisdiction and that of the district courts." *Id.*[12] The Supreme Court has explained that "the irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal footnote and citations omitted). These elements are an

---

[12]    The Supreme Court frowns upon a federal court "resolv[ing] contested questions of law when its jurisdiction is in doubt." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *see Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 300 (3d Cir. 2003) (explaining the importance of the standing doctrine).

26

"an indispensable part of [a] plaintiff's case[.]" *Id.* at 561. In a class action, "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth*, 422 U.S. at 502). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Berg v. Obama*, 586 F.3d 234, 242 (3d Cir. 2009) (internal quotation marks omitted). "[W]e are required to raise issues of standing *sua sponte* if such issues exist." *Addiction Specialists, Inc v. Twp. of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005) (internal quotation marks omitted).

Here, an issue of mootness is presented. Prior to the final approval of the settlement, Congress eliminated the named plaintiffs' injury-in-fact, *see* Pub. L. No. 110-241, the printing of the expiration date of their debit cards. By doing so, it eliminated the District Court's jurisdiction over Ehrheart's and Garland's cases. Ehrheart's complaint does not allege any personal injury besides the printing of the expiration date of her credit or debit card on a receipt on June 7, 2007. Her injury stemmed solely from 15 U.S.C. § 1681c(g), a statute "creating legal rights, the invasion of which create[d] standing[.]" *Warth*, 422 U.S. at 500 (internal quotation marks omitted). Once her injury—the invasion of her right not to have the expiration date of her credit or debit card printed on a receipt—was deemed a non-injury by Congress, her standing to seek relief in federal court was eliminated and her case was rendered moot. *See id.* As such, the District Court could not have held a fairness hearing, issued final approval of the settlement, or entered final

27

judgment in Ehrheart's case without violating Article III. Ironically, it is the District Court's supervisory role as a fiduciary for the absent class members—a role the majority and Ehrheart trumpet in their reasoning—that dooms her claim. Without the District Court's final approval after a fairness hearing, and the entry of final judgment, the settlement was not complete. The District Court lost jurisdiction to issue final approval or enter final judgment when Ehrheart's case was rendered moot.

Garland's action should likewise be dismissed as moot. Although his complaint's ambiguous allegation that Verizon injured him by "print[ing] more than the five digits of [his] credit . . . or debit card number and/or print[ing] the expiration date of [his] credit or debit card," leaves open the possibility that he has a cognizable injury-in-fact based on the printing of his account number, everything in this litigation points to his injury as being based solely on the printing of the expiration date of his credit or debit card. Indeed, the District Court, in its opinion and order granting Verizon's motion for judgment on the pleadings, concluded that "[a]lthough Garland allege[d] in the alternative that [Verizon] printed more than the last five digits of his credit / debit card on his receipt . . . the actual receipt which Garland attached to his Complaint reveal[ed] only the printing of his expiration date, and not the printing of more than the last five digits of his credit / debit card." It reached this conclusion based on Verizon's undisputed explanation of Garland's injury in its memorandum in support of its motion for judgment on the pleadings. Moreover, Garland's own arguments throughout this litigation have assumed that he has no claim due to the Clarification Act. For example, his memorandum in opposition to Verizon's motion to vacate the

28

District Court's preliminary approval of the settlement agreement began by assuming that his claim was eliminated by the Clarification Act. It then argued that despite this shortcoming Garland was entitled to the fruits of the Settlement Agreement. His arguments in this appeal are a continuation of that untenable argument. Despite challenging the order granting Verizon's motion for judgment on the pleadings in this appeal, Garland does not challenge the District Court's conclusion regarding his injury.

Because the Article III standing requirements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," *id.*, but in light of the receipt attached to Garland's complaint, his failure to refute the assertion that his only injury stemmed from the printing of his credit or debit card's expiration date, his litigation strategy, and the District Court's entry of judgment on the pleadings in favor of Verizon, I view his injury-in-fact as being limited to the printing of his credit or debit card's expiration date. Therefore, I conclude that Garland's claim, like Ehrheart's claim, was rendered moot after the passage of the Clarification Act.

IV.

Although the District Court erred by cabining its analysis to the terms of Rule 23(e), its ultimate outcome and much of its

29

underlying reasoning was correct. I would vacate the judgment on the pleadings in favor of Verizon and remand this case with instructions for the District Court to dismiss both named plaintiffs' complaints as moot. Because the majority permits this matter to proceed, despite the lack of a live "case or controversy" as required under Article III, I respectfully dissent.